122 So.2d 119

Ex parte Martha W. PORTER et al.

3 Div. 870.

Supreme Court of Alabama.
July 14, 1960.

Simpson, J., Merrill and Coleman, JJ., dissented in part.

John W. Pemberton, Frank W. Riggs, III, and Godbold, Hobbs & Copeland, Montgomery, for petitioners.

**46**

Rives, Peterson, Pettus & Conway, Birmingham, and Steiner, Crum & Baker, Montgomery, for respondent.

STAKELY, Justice.

This matter is in this court on a petition for a peremptory writ of mandamus and the answer of the respondent, Judge Walter B. Jones, the trial judge, to the rule nisi issued by this court.

State Farm Mutual Automobile Insurance Company commenced a declaratory judgment action on the law side of the Circuit Court of Montgomery County, naming as respondents, R. S. Porter, Mrs. Martha W. Porter, E. C. Snead and Harold T. Snead, all of whom live in Montgomery County, Alabama. (The defendants are the petitioners here).

The action sought a declaration that a policy of insurance issued by State Farm to petitioner, R. S. Porter, was not in force and effect on November 8, 1958, at which time Harold T. Snead, minor son of E. C. Snead, was involved in an accident with the automobile of R. S. Porter, which was being driven by his wife, Mrs. Martha W. Porter. Shortly after the commencement of the action State Farm took the depositions of R. S. Porter and Mrs. Martha W. Porter and thereafter filed a motion to transfer the cause from the law side to the equity side of the court for the purpose of cancelling or reforming an alleged erroneously issued receipt, which incorrectly showed that the premium on the aforesaid policy of insurance had been paid prior to the date of the accident.

The motion to transfer alleges that the aforesaid receipt and the original policy together form a contract of insurance which on its face indicates coverage in force and effect on the date of the accident, whereas in truth and in fact the aforesaid premium had not been paid when the accident occurred and the policy was not in force and effect on that date.

The defendants E. C. Snead and Harold T. Snead, through his guardian ad litem, demurred to the motion of State Farm to transfer and the defendants R. S. Porter and Martha W. Porter filed an answer to the motion, attached to which was an affidavit of R. S. Porter.

The motion to transfer was heard by the respondent at which time there was some discussion of the averments of the motion to transfer in the light of the grounds of

the demurrer assigned and attorneys for State Farm conceded that there might be some technical omission readily amendable. Without any ruling on the demurrer the hearing proceeded to a consideration of the merits of the motion. Evidence and arguments were heard by the respondent, who, considering all allowable amendments to have been made, overruled the demurrers to the motion to transfer and entered an order transferring the cause to the equity side of the court for further proceedings. Thereafter petitioners (defendants in the court below), filed in this court their petition for a writ of mandamus in response to which this court issued a rule nisi to the respondent allowing thirty days within which to show cause why a peremptory writ of mandamus should not issue directing the respondent to return the case to the law side of the court. Within thirty days respondent filed his answer alleging cause why the peremptory writ of mandamus should not issue.

State Farm Mutual Automobile Insurance Company was insurer under a policy of automobile liability insurance covering an automobile owned by R. S. Porter, the premium for which was paid through October 28, 1958 and thus the policy expired on that date. When the policy expired State Farm sent to R. S. Porter an expiration notice, stating that the policy expired at 12:01 a. m. on October 28, 1958, and that "payment within ten days of due date (October 28, 1958) will renew your policy and provide continuous protection." We note here that the expiration notice said nothing whatever about reporting any accident to any agent of the plaintiff. The notice which did contain such a statement was a "semi-annual premium notice," a form which State Farm sends in advance of the due date while the policy is in force. A copy of this form is attached to the respondent's answer and made a part thereof. In the deposition of R. S. Porter, he said, "I might have received such a notice but did not recall."

According to the deposition of Mrs. Martha W. Porter she wrote a check in the amount of the premium on October 31, 1958, and gave the check to her husband on that date. Mr. Porter put the check in his pocket and left it there until November 9, 1958. The ten day option to renew expired on November 7, 1958, without the premium having been paid. On November 8, 1958, Mrs. Martha W. Porter while driving the automobile of her husband which had been insured under the policy in question, was involved in an accident resulting in an injury to Harold T. Snead with resultant damage to his father, E. C. Snead.

Mrs. Porter advised Mr. Porter of the accident and he realized that he had not paid the premium within the time allowed. On Sunday, November 9, 1958, at around 6:30 or 7:00 p. m., according to Mr. Porter's deposition, he telephoned a Mr. Johnson, the State Farm salesman in Montgomery through whom he had purchased the policy, told him of the accident and that he had not paid the premium and asked Mr. Johnson whether he should mail the check. Mr. Porter quotes Mr. Johnson as saying, "Well, you travel, you have to have insurance don't you?" and "Well you are still driving the car aren't you; you have to be insured." After that conversation, sometime between 7:00 and 8:30 p. m. on November 9, 1958, Mr. Porter mailed from the Post Office in Montgomery to the State Farm Office in Birmingham the check dated October 31, 1958, along with the expiration notice which contained the ten day option to renew with continuous coverage. The enclosure did not show the actual date of mailing and did not show that the accident had occurred on November 8, 1958. Some three or four days later Mr. Porter received through the mail the expiration notice which he had sent and the stamped date of payment shown on the notice appears to be November 2, 1958, seven days before the check was deposited at the Post Office at Montgomery on November 9, 1958.

In its motion to transfer State Farm alleges that when the expiration notice and check were received in the premium payment department of State Farm's Birmingham office, a mistake was made in the issuance of the receipt in that through error, mistake or inadvertence, the clerk whose duty it was to stamp the date of payment on the receipt, entered a date of payment which appears to be November 2, 1958, whereas in fact the check was not deposited in the United States mail until the night of November 9, 1958, and was not received in the Birmingham office of State Farm until November 10, 1958.

The motion to transfer further alleges that in the ordinary course of business the proper method of handling the check and only method which the clerk who processes, was authorized to handle the check, was to reinstate the policy with coverage effective as of the date of payment and to refund to Mr. Porter the unearned premium for the period the policy was out of force. According to the allegations of the motion, within a reasonable time after discovery of the mistake made in the entering of the date of payment on the receipt, State Farm on January 20, 1959, prepared a corrected premium receipt, showing the date of payment as of November 10, 1958, computed the unearned premium, for 13 days when the policy was out of force between the policy due date and the date of payment to be $4.07 and sent to R. S. Porter the corrected premium receipt and a check in the amount of $4.07 as a refund for the unearned premium. R. S. Porter returned to State Farm the check in the amount of $4.07 and the corrected premium receipt, contending the coverage was made continuous by virtue of the entry on the original receipt showing payment to have been made on November 2, 1958. The check for $4.07 and the corrected premium receipt are attached to the respondent's answer and made a part thereof.

The motion to transfer further alleges that the clerk who made the mistake in entering the date of payment on the receipt had no authority to enter a date of payment so as to give continuous coverage or to enter any date of payment other than the date payment was in fact made and had no authority to waive late payment after the expiration of ten days from the due date and that State Farm did not intend to show payment of the premium on November 2, 1958, when in fact the payment was not received until November 10, 1958.

State Farm further alleges in its motion that but for the existence of the receipt bearing the incorrect date of payment notation, the same having been issued wholly by mistake, there would be no cloud on plaintiff's right to a declaration in the declaratory judgment action to the effect that coverage was not in force and effect under the policy at the time of the accident which occurred on November 8, 1958, since the said instrument is the only piece of evidence in any way indicating that premium on the policy was paid prior to the date on which it was actually paid.

State Farm further alleges in its motion that it has an equitable right to cancel the receipt thus erroneously issued and to have the same reformed so as to show the actual date on which the premium payment was made.

In his deposition Mr. Porter said that Mr. Johnson "told me at the time that he would get in touch with his adjuster, State Farm's adjuster, and have them get in touch with me immediately, and let me know the status on this particular incident such as the premium and so on like that." According to Mr. Porter's deposition and his affidavit attached to his answer to the motion to transfer, he did not hear anything from State Farm about this accident until about the first week in January, 1959, at which time a signed statement was obtained by a State Farm representative. This statement appears in the respondent's answer and relates to the matter of the date of payment of the premium and the receipt which Mr. Porter received for same. Mr. Porter contends that when he received the receipt he assumed that his policy had

been continued in force and did not contact an attorney because of that assumption. He claims that he failed for two months to protect his legal rights or those of his wife by securing the services of an attorney and that his inaction was caused by the action of the State Farm which caused him to believe that it was providing coverage for the period of the accident. These contentions are set forth in the affidavit of R. S. Porter which was attached to his answer to the motion to transfer.

The motion to transfer was submitted upon the sworn motion, the answer of the defendants R. S. Porter and Mrs. Martha W. Porter, the depositions of R. S. Porter and Mrs. Martha W. Porter and argument of counsel on the merits of the motion, considering all allowable amendments as having been made. Respondent found that the motion to transfer and the proof sufficiently alleged and showed an equitable question or right, the decision of which should dispose of the cause and which cannot be disposed·of on the law side of the court. The respondent in his answer stated that he is "of opinion that State Farm presented in good faith a claim of an equitable right which was not ficticious nor made for the purpose of delay, and that full and complete justice could only be had in equity."

■■■■ I. In expressing our views on this case we shall at the outset make it clear that the question before the trial judge at the hearing on the motion to transfer was not whether the plaintiff in fact had a right to revise or reform, but whether it asserted a claim of such a right not fictitious and not made for delay. Ex parte R. A. Brown & Co., 240 Ala. 157, 198 So. 138. In other words, the hearing on the motion is not res judicata on the issue of equitable right and defense. The hearing on the motion should not serve as a substitute for the consideration of the cause upon its full merits. The hearing is to determine whether the ends of justice will properly be promoted by a transfer or by denial of such motion.

Ballentine v. Bradley, 238 Ala. 446, 191 So. 618. This court has held that mandamus is a proper remedy to review an order of the court transferring the cause to the equity side of the court. Ballentine v. Bradley, 236 Ala. 326, 182 So. 399; Ex parte Holzer, 219 Ala. 431, 122 So. 421; Jones v. Wright, 220 Ala. 406, 125 So. 645; Ex parte Louisville & N. R. Co., 211 Ala. 531, 100 So. 843.

■■ II. It is claimed that the policy expired for nonpayment of premium on October 28, 1958, and that an option was extended to the insured, R. S. Porter, that if he would pay a renewal premium within ten days from October 28, 1958, his policy would be renewed so as to give continuous coverage. There is no doubt that the option was not exercised but expired on November 7, 1958, and the policy had lapsed. The policy had lapsed therefore when the accident occurred on November 8, 1958. Mr. Porter had not been told after the expiration of his policy that he should report any accident to any State Farm agent. He had only been advised to pay his premium if he wanted protection and this he failed to do. It is true that while his policy was in effect, Mr. Porter had been given notice that his premium would become due on October 28, 1958, and that his policy would expire at that time and he was reminded at that time, when his policy was in full force and effect, that he should report any accident to his State Farm agent. Such notice, however, made no reference to what should be done in the event of an accident which might occur when the policy had lapsed.

More than one day after the accident and two days after the expiration of the option to renew with continuous coverage, Mr. Porter mailed from Montgomery a ten day old check (dated October 31, 1958), along with his expiration notice to the State Farm Office in Birmingham, enclosing no notice of the accident and no notice of the actual date of mailing and when the check was received in Birmingham on November 10, 1958, a mistake was made by the clerk who.

processes premium payments. It is shown that the clerk so stamped the expiration notice that it indicates payment of the premium on Sunday, November 2, 1958, when in truth the premium was not even mailed from Montgomery until Sunday, November 9, 1958. This expiration notice thus stamped became a receipt, which was mailed to Mr. Porter. The receipt showing payment had been made on November 2, 1958, within the ten days option to renew period, when combined with the policy, which in fact had expired, would constitute an insurance contract with the insured, showing on its face that coverage was in force and effect at the time of the accident on November 8, 1958.

In the ordinary course of business the proper method of handling a check and expiration notice which was mailed by Porter would have been for the clerk to reinstate the policy with coverage effective as of the date of payment and to refund to Porter its unearned premium calculated for the period during which the policy was not in force and effect. It is alleged that within a reasonable time after discovery of the mistake, State Farm prepared and issued to Mr. Porter a corrected premium receipt on January 20, 1959, showing the date of payment as November 10, 1958, computed the unearned premium for thirteen days when the policy had no force and effect, between the policy due date and the date of payment, to be $4.07, and sent such corrected premium receipt and a check in the amount of $4.07 as a refund for the unearned premium to R. S. Porter. Mr. Porter returned the corrected receipt and check to State Farm, contending that coverage was made continuous by virtue of the incorrect date of payment shown on the original receipt or expiration notice. It is shown that Mr. Porter knew when he sent the ten day old check that the accident had occurred on the day before, that the policy had expired twelve days previously and that his option to renew with continuous coverage had expired two days previously.

State Farm contends that but for the the existence of the receipt bearing the incorrect date of payment, the same having been issued entirely by mistake, there would be no cloud upon its right to a declaration to the effect that coverage was not in force and effect under the policy at the time of the accident, which occurred on November 8, 1958, because said instrument is the only piece of evidence in any way indicating that the premium was paid prior to the date on which it was actually paid, according to the undisputed evidence. It is alleged by State Farm that the date of November 2, 1958, was entered on the receipt by a mistake or inadvertence of the clerk whose duty it was to stamp the date of payment on the receipt and that the clerk who made the mistake had no authority to enter a date of payment so as to reinstate the policy retroactively but could only renew the coverage effective as of the date of payment.

As to the basis upon which State Farm claims a right to revise or reform, we refer to § 59, Title 9, Code of 1940, which in effect states that when through fraud or a mutual mistake or a mistake made by one party which the other at the time knew or suspected, a written contract does not truly express the intentions of the parties, it may be revised by a court of equity upon application of the party aggrieved so as to express the intention, so far as it can be done without prejudice to the rights acquired by third persons in good faith and for value.

■ It is not necessary that the mistake of fact be mutual nor that the fraud in its strict sense induced the mistake. The contract may be reformed for fraud or other inequitable conduct of one plus mistake on the part of the other. American Liberty Ins. Co. of Birmingham v. Leonard, 270 Ala. 17, 115 So.2d 470.

■ The duty of Mr. Porter to communicate the facts when he sent the check arose from the relations of the parties as well as the peculiar circumstances of the case. "Insurance policies are traditionally contracts uberrimae fidei and a failure by

the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option." Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S.Ct. 512, 513, 72 L.Ed. 895. Uberrima fides is defined in Black's Law Dictionary, p. 1690. We quote as follows:

"The most abundant good faith; absolute and perfect candor or openness and honesty; the absence of any concealment or deception, however slight. A phrase used to express the perfect good faith, concealing nothing, with which a contract must be made; for example, in the case of insurance, the insured must observe the most perfect good faith towards the insurer."

We think that from the facts shown a reasonable inference may be drawn that the conduct of R. S. Porter amounted to inequitable conduct which, coupled with the mistake or lack of knowledge of the accident on the part of the State Farm clerk, would authorize rescission or reformation of the contract claimed to have been formed by the expired policy and the incorrectly dated receipt. We say again that we are not now undertaking to say or intimate what the court should find after all the evidence is considered when the case is tried on the merits, but are saying that the court was correct in holding that the movant has shown enough to warrant the court in transferring the cause to the equity court.

It is our judgment that the order of the trial judge should not be disturbed.

Mandamus denied.

All the Justices concur that mandamus is the proper method of review except SIMPSON, J., who dissents from this part of the opinion.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur in the result on the merits.

SIMPSON, J., concurs in the opinion as to the merits.

MERRILL and COLEMAN, JJ., dissent as to the merits.

SIMPSON, Justice (dissenting).

With respect to the procedual question first discussed in the foregoing opinion, I respectfully dissent. My views on the question are stated in my special concurrence in the case of Louisville & Nashville Railroad Co. v. Solchenberger, Ala., 120 So.2d 704, 714.[1] I think this to be the sounder rule in view of the long settled principle that the original and main function of mandamus is to coerce judicial action and not to review it and also the rule against "piecemeal" review. I wish to quote from my statement in the Solchenberger case to illustrate my dissent in this case, to-wit:

"It has long been my opinion that the method of review of motions to transfer was correctly stated in Esslinger v. Spragins, 236 Ala. 508, 183 So. 401, 403, as follows:

"'We have uniformly held that an order refusing to transfer a cause from the law docket to the equity docket may not be assigned for error "on any sort of an appeal, *and one which makes the transfer can only be assigned for error on appeal from a final decree.*" Holder v. Taylor, 233 Ala. 477, 172 So. 761, 762; Derzis v. Cox, 223 Ala. 517, 137 So. 306; Ex parte Louisville & N. R. Co., 211 Ala. 531, 100 So. 843; Pearson v. City of Birmingham, 210 Ala. 296, 97 So. 916; Smith v. Grayson, 214 Ala. 197, 107 So. 448; Wiggins v. Stewart Bros., 215 Ala. 9, 109 So. 101; Code, Section 6490.'

"See also Employers Ins. Co. of Alabama v. Brock, 233 Ala. 551(1), 172 So. 671; Jones v. Wright, 220 Ala. 406 (4), 125 So. 645."

As regards the case on the merits, I wish to concur in the result reached by Justice

1. 270 Ala. 536.

**52**

STAKELY in his opinion. The right to remove a cause to equity is well understood. See Ex parte Brown & Co., 240 Ala. 157, 198 So. 138; Whitten v. Sheffield, 233 Ala. 580, 173 So. 48. Using this rule as a guide, I think the motion to transfer contains sufficient allegations to show prima facie the right of movant to have the cause transferred to equity in order to attempt to reform the receipt under consideration.

COLEMAN, Justice (dissenting in part).

I concur in the holding that the decree transferring the cause to equity may be reviewed by mandamus. Ex parte Holzer, 219 Ala. 431, 122 So. 421.

I am of the opinion that State Farm has not sufficiently shown a right to reformation of the receipt and therefore dissent on the holding that the cause was correctly transferred to equity.

MERRILL, J., concurs in the opinion of COLEMAN, J.